**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 12-cv-02471-JLK

PAUL CURRY,

      Plaintiff,

v.

MILLERCOORS, INC.,

      Defendant,

## MOTION TO DISMISS

      Defendant MillerCoors LLC respectfully moves to dismiss Plaintiff's Complaint pursuant to Fed.R.Civ.P. 12(b)(6). Plaintiff Paul Curry brings four state-law claims against MillerCoors arising from his employment and the events surrounding the termination of his employment. For the reasons set forth below, Plaintiff fails to state a claim on which relief may be granted.

### ALLEGATIONS

      MillerCoors employed Plaintiff as a maintenance mechanic. (Compl. ¶ 5.) A physician recommended to Plaintiff that he use medical marijuana to treat the symptoms of Hepatitis C, arthritis, and a back injury. (Id. ¶¶ 16-17.) Plaintiff used medical marijuana "relatively inconsistently until February 18, 2011." (Id. ¶ 17.)

1

On January 19, 2011, MillerCoors met with employees, including Plaintiff, and distributed a drug-free workplace policy statement. (Compl. ¶ 18; Ex. A at 10; Ex. B at 5.)[1] The policy statement explained MillerCoors' drug-free workplace policy and its policy on post incident drug and alcohol testing. (Ex. A.) Under the policy, the prohibition on drugs "extend[ed] to conduct during non-working time that impairs an employee's ability to safely and effectively perform job duties or threatens the integrity of Company operations to have a drug-free workplace." (Id. at 2.) The policy included marijuana as an "illegal drug" and provided that "[e]mployees who test positive will be subject to disciplinary action, up to and including termination." (Id. at 6.)

The policy also stated that an employee who uses or receives a prescription for a drug that "could impact the employee's ability to perform job duties" or who "receives a recommendation for medical marijuana," must report it to MillerCoors' Medical Center or to Human Resources and that "[a]pproval to work may be withheld if it is determined that the situation presents a safety risk to the employee or others." (Ex. A at 7; cf. Compl. ¶ 19.)

Plaintiff did not report his recommendation for medical marijuana to the Medical Center or to Human Resources, as called for by the policy. (Compl. ¶¶ 26, 52.) He continued his "relatively inconsistent" use of medical marijuana after the January policy statement. (Id. ¶ 17.)

On March 3, 2011, Plaintiff was involved in an accident at work. (Compl. ¶ 20.) Plaintiff stood on a handrail to signal a crane operator. (Id. ¶ 21.) The accident with the crane

---

[1] MillerCoors submits documents that are central to the claims or referenced in the Complaint. If the Court deems these documents not appropriate for a Motion under Fed.R.Civ.P. 12(b)(6), the Court may convert the Motion to one under Fed.R.Civ.P. 56. See, Fed.R.Civ.P. 12(d).

2

resulted in damage to the roof of the facility. (Id. ¶¶ 20, 21.) Plaintiff's involvement in the incident automatically triggered a post incident drug test under MillerCoors' policy. (Id. ¶ 22.)

While waiting for the drug screen, Plaintiff disclosed that he used medical marijuana. (Compl. ¶ 23.) MillerCoors' attempts to collect a specimen from Plaintiff for a drug screen on the day of the accident yielded invalid results. (Id. ¶¶ 23, 24.) MillerCoors directed Plaintiff to the Health Services clinic to take another test the next day. (Id. ¶ 24.)

On March 7, 2011, MillerCoors gave Plaintiff a written warning for having not reported his physician's medical marijuana recommendation to the Medical Center, as required by MillerCoors' drug-free workplace policy, and a written warning for conduct MillerCoors considered unsafe – Plaintiff's standing on a handrail to signal the crane operator on March 3, 2011.[2] (Compl. ¶¶ 21, 26, 27.)

On March 10, 2011, the Medical Review Officer returned the results from the Health Services clinic drug test. (Id. ¶ 28.) The results were a verified positive for cannabinoids (THC). (Id.) The results from the Medical Review Officer did not indicate whether the THC found in Plaintiff's sample was "active or merely residual from his use of medical marijuana off work hours." (Compl. ¶ 25.) He contends that he never used medical marijuana at work "or close to" work hours. (Id.) On March 14, 2011, MillerCoors discharged Plaintiff. (Id.. ¶ 29.)

## I. LEGAL STANDARD

In considering a Motion under Fed.R.Civ.P. 12(b)(6), the Court may consider the complaint and also documents incorporated into the complaint by reference or central to the claim, provided the parties do not dispute the documents' authenticity. Smith v. United States,

---

[2] Plaintiff does not allege that the written warning for unsafe conduct was inappropriate regardless of his marijuana use.

3

561 F.3d 1090, 1098 (10th Cir. 2009).  The Court must accept as true well pleaded factual allegations, but not legal conclusions or conclusory statements.  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).  Allegations that contradict a document that is properly before the Court are not well pleaded factual allegations.  <u>GFF Corp. v. Associated Wholesale Grocers</u>, 130 F.3d 1381, 1385 (10th Cir. 1997).  Dismissal is appropriate when the Complaint does not contain enough well pleaded facts to state a claim that is plausible on its face.  <u>Smith</u>, 561 F.3d at 1098.

## II. ARGUMENT

### A. Plaintiff States No Claim Based On Disability Discrimination.

Plaintiff's first claim is for disability discrimination under C.R.S. § 24-34-402(1)(a).  (Compl. ¶ 30.)[3]  Plaintiff specifically alleges that "MillerCoors discharged [Plaintiff] . . . because of the treatment that [Plaintiff] was using to manage the symptoms of his disabling medical conditions."  (<u>Id.</u> ¶ 31.)  The "treatment" at issue is Plaintiff's "relatively inconsistent use" of medical marijuana.  (<u>Id.</u> ¶¶ 17, 28, 29; <u>see also</u> Ex. B at 9 [stating MillerCoors discriminated against Plaintiff "for being a medical marijuana patient"].)  Plaintiff specifically asserts that he "did not require any accommodation for this treatment because he only used medical marijuana off-duty and his disability, as well as the treatment of his disability, did not have a significant impact on his job."  (<u>Id.</u> ¶ 31.)

    1.    <u>Plaintiff Fails To Allege A Violation Of C.R.S. § 24-34-402(1)(a)</u>.

Plaintiff's first cause of action fails to state a claim on which relief can be granted.  Plaintiff does not allege a violation of C.R.S. § 24-34-402(1)(a); instead Plaintiff alleges that MillerCoors discharged him for testing positive for "cannabinoids," i.e. for metabolites of

---

[3] Plaintiff mistakenly cites C.R.S. § 24-34-401(1)(a), but his quotation clarifies the citation.

4

marijuana.  (Compl. ¶¶ 28, 29, 36.)  A positive test for marijuana, whether from medical or any other use, is a legitimate basis for discharge under Colorado law.  See <u>Slaughter v. John Elway Dodge Southwest/Autonation</u>, 107 P.3d 1165, 1170 (Colo. App. 2005) (C.R.S. § 8-73-108(5)(e)(IX.5) "clearly establishes that it is acceptable for an employer to have a written drug policy and to terminate an employee as the result of a drug test showing the presence of marijuana in the employee's system during working hours"); <u>Benoir v. Industrial Claim Appeals Office</u>, 262 P.3d 970, 977 (Colo. App. 2011) (ruling employee at fault under C.R.S. § 8-73-108(5)(e)(IX.5) for separation from employment, despite Constitutional amendment allowing medical marijuana).

Plaintiff simply alleges MillerCoors' enforcement of its drug-free workplace policy.  (See Compl. ¶¶ 28, 29.)  Enforcing its policy is a lawful basis for MillerCoors' decision to discharge Plaintiff.  See <u>Kosmicki v. Burlington Northern & Santa Fe Ry. Co.</u>, 545 F.3d 649 (8th Cir. 2008) (in Americans with Disabilities Act case, ruling that employee's violation of employer policy by both (a) failing to provide employer complete factual information regarding his treatment and medication on a medical screening questionnaire and (b) working while taking prescription drugs that affected his cognitive abilities, were legitimate non-discriminatory reasons for discharge); 42 U.S.C. § 12114(c)(3) (employer may require employees to conform with requirements of Drug Free Workplace Act [41 U.S.C. §§ 8101-8106]); 41 U.S.C § 8102 (requiring public contractors to have and enforce policies against employee use at work of "controlled substances," including substances on Schedules I to V of 21 U.S.C. § 812."); 21 U.S.C. § 812(c)(c)(17) (listing THC on schedule I).  Plaintiff does not allege and could not allege that MillerCoors applied its drug-free workplace policy differently or more stringently on

5

employees who test positively and who have medical marijuana cards.  Consequently, Plaintiff does not allege a violation of C.R.S. § 24-34-402(1)(a).

  2. <u>Plaintiff Was Not "Qualified" Under C.R.S. § 24-34-402(1)(a)</u>.

Section <u>24-34-402(1)(a)</u>, by its very terms, only applies to "otherwise qualified" individuals.  Under MillerCoors' drug-free workplace policy, an individual who tests positive for a controlled substance (including medical marijuana) is not qualified.  Insofar as Plaintiff was not qualified, he may not assert a claim for relief under the statute.[4]

  **B. Plaintiff States No Claim For Invasion of Privacy.**

Plaintiff's second claim is for invasion of privacy based on intrusion upon seclusion.  (Compl. ¶ 38.)  When the conclusory allegations and the legal contentions are stripped away, Plaintiff claims two intrusions.  First, he alleges that MillerCoors' "medical marijuana disclosure policy purports to require MillerCoors to gain access to information about patients in the state health agency's confidential registry."  (<u>Id.</u> ¶ 44; <u>see also</u> ¶¶ 40, 50, 57.)  Second, he alleges he did not consent to the drug screens administered on March 3, 2011.  (<u>Id.</u> ¶¶ 53, 56.)

The Restatement (Second) of Torts § 652B (1981) states that: "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person."  <u>See</u> <u>Doe v. High-Tech Institute, Inc.</u>, 972 P.2d 1060, 1067 (Colo. App. 1998) (citing Restatement and citing <u>Grease Monkey International, Inc. v. Montoya</u>, 904 P.2d 468 (Colo.1995) for authority to rely on the Restatement).  In addition, a

---

[4] In a disability discrimination case, a disabled individual may contend that, although not "qualified," he or she could be qualified if the employer provided a reasonable accommodation.  <u>See</u> generally <u>AT&T Technologies, Inc. v. Royston</u>, 772 P.2d 1182 (Colo. App. 1989).  As discussed further in Section C below, however, Plaintiff here specifically contends that he did not require any accommodation for his medical marijuana treatment by MillerCoors.  (Compl. ¶ 31 ["Mr. Curry did not require any accommodation for this treatment . . ."]).

6

claim for intrusion upon seclusion requires showing "an unreasonable manner of intrusion or an intrusion for an unwarranted purpose."  <u>Slaughter</u>, 107 P.3d at 1171.

      1.    <u>Plaintiff States No Privacy Claim Based On MillerCoors' Policy</u>.

Plaintiff fails to state a claim for intrusion upon seclusion based on MillerCoors' policy that allegedly "required" him to disclose "private and confidential medical information." (Compl. ¶ 50.)  MillerCoors' policy required employees to report that they had a recommendation for medical marijuana.  (Ex.A at 7.)  However, Plaintiff does not allege that he complied with the policy.  He did not report his physician's recommendation to MillerCoors' Medical Center or to Human Resources in accordance with the policy became effective.  (Compl. ¶¶ 23, 52; Ex. C  [referenced at Compl. ¶ 53] at 1 ["I asked if he has declared having a medical marijuana card with MillerCoors Company. He advised he hasn't had time and it isn't registered with the company."].)  In the absence of allegations of a disclosure by Plaintiff, or at least repeated or abusive badgering of him by MillerCoors for this information, Plaintiff has not alleged an actionable intrusion, and hence, has not alleged an invasion of his privacy.  <u>See</u> <u>e.g.</u>, <u>Alvarado v. KOB-TV, L.L.L.</u>, 493 F.3d 1210, 1214-18 (10th Cir. 2007) (no intrusion upon seclusion when television station showed footage of a reporter going to the homes of two undercover police officers under investigation for alleged sexual assault, questioning them about investigation, and being denied interviews); <u>Kelly v. Mercoid Corp.</u>, 776 F. Supp. 1246, 1257 (N.D. Ill. 1991) (employee who never submitted to urinalysis, pursuant to employer's policy that those who handled open mercury were to be tested, "[o]bviously . . . cannot [] demonstrate an unauthorized intrusion.")

7

In addition, any alleged intrusion effected through MillerCoors' policy was reasonable and was not for an unwarranted purpose.  Slaughter, 107 P.3d at 1171.  Under Colorado law, a private employer may conduct drug tests of its employees pursuant to a written policy.  See id. at 1170.  In Slaughter, the plaintiff argued for a right of privacy that included "the right to control personal information, exemplified by medical and drug testing questionnaires, background checks, electronic mail searches and video surveillance."  Id. at 1169.  After reviewing provisions of the U.S. Constitution, the Colorado Constitution and the common law tort of invasion of privacy, the Court of Appeals found no clearly expressed right to privacy.  To the contrary, the Court determined that in Colorado, employers have a right to conduct drug testing.  Id. at 1170.  See also People v. Palomo, 31 P.3d 879, 883 (Colo. 2001) (employer drug screening results are not medical information or medical records, because such tests are not performed in order to enable a physician to treat the employee); Kelly v. Mercoid Corp., 776 F. Supp. at 1257 (mandatory urinalysis for employees working with open mercury is not an unreasonable intrusion into seclusion, as matter of law); Horgan v. Simmons, 704 F. Supp. 2d 814, 821-22 (N.D. Ill. 2010) (supervisor's inquiries about what was wrong and insistence that "if there was something medical going on, [he] needed to know," resulted in plaintiff revealing his HIV positive status; no unreasonable intrusion into seclusion, as matter of law).

Further, Plaintiff's claim is narrow.  He does not challenge Defendant's larger drug testing program.  The Tenth Circuit has held that an employer's collection of such information, in support of a drug testing program, is a mild intrusion that does not give rise to invasion of privacy liability.  Mares v. Conagra Poultry Co., 971 F.2d 492, 496 (10th Cir. 1992) (questions to employees about their use of prescription drugs in the context of a drug testing program do not

8

constitute a significant intrusion into seclusion).  Instead, Plaintiff argues that Colorado's medical marijuana laws created a special penumbra of privacy around an employee's status as a medical marijuana user.

Plaintiff cites Colorado Constitution, Article XVIII, § 14 and C.R.S. § 18-18-406.3(5) to support special privacy protection for medical marijuana.  (Compl. ¶¶ 41, 43.)  These provisions provide no protection from a private employer's inquiry of an employee concerning a recommendation for medical marijuana.  Article XVIII § 14(3)(a) merely provides that the state health agency's database will be confidential, and C.R.S. § 18-18-406.3(5) prohibits the release of information contained in a confidential record that has been given to the state health registry.  Plaintiff does not allege a release of information from (or by) the state registry.

Because the Colorado constitutional amendment and statutes on medical marijuana do not expand employees' privacy rights, and because the Colorado Court of Appeals found no public policy supporting a broad privacy interest in medical and drug testing questionnaires, Plaintiff fails to state a claim for invasion of privacy based on MillerCoors' policy alone.

2.      Plaintiff States No Privacy Claim Based On The Drug Screens.

Plaintiff alleges that he "never consented" to the drug screenings performed on March 3, 2011 – the screens that yielded invalid results.  (Compl. ¶¶ 20, 24, 53.)  He alleges – as support for the claim – that the security officer's incident report did not state that he affirmatively asked Plaintiff for consent or that Plaintiff gave consent.  (Id. ¶ 55; see also Ex. C.)

Contrary to his allegation, Plaintiff participated in the drug screens voluntarily.  In his statement, given to the Colorado Civil Rights Commission in support of his Charge of Discrimination, Plaintiff stated: "I voluntarily submitted to this drug screen on two separate

9

occasions on March 3, 2011." (Ex. B at 6.) He added that he voluntarily went to the MillerCoors Medical Center for another drug screen the next day. (Id.) Plaintiff's conclusory allegation that he did not consent to a drug screen does not state a claim in the face of his own, indisputably authentic, statement to the CCRD.

Further, consent to what otherwise would be an invasion of privacy need not be express. Restatement (Second) of Torts § 652B, Reporter's Notes, comment b. See also Vespa v. Safety Federal Savings & Loan Assoc., 549 P.2d 878, 881 (Kan. 1976) (finding waiver of right of privacy where, inter alia, plaintiff did not refuse permission to enter, plaintiff met with defendant in her home for hours and never asked him to leave). Here, Plaintiff alleges that MillerCoors explained and distributed its drug-free workplace policy on January 19, 2011. (Compl. ¶ 18.) Knowing the policy, Plaintiff continued to work for MillerCoors. When the accident occurred on March 3, 2011, he confirmed to the security officer that he knew the policy. (Ex. C at 1.) In addition, he sat with the security officer for more than ten minutes, engaged in conversation and answered the security officer's preliminary questions. (Id. at 2-3.) Plaintiff then selected the swab to use in the test and held it in his mouth. (Id. at 3.) After ten more minutes, when the first test came back invalid, Plaintiff engaged in the entire process again. (Id.) Plaintiff never protested the test or refused to participate. Through his conduct, Plaintiff waived any objection to, or implicitly consented to, any purported invasion of privacy from the drug screens. See Slaughter, 107 P.3d at 1170 (noting that the plaintiff consented to the employer's policy when she was hired).

Finally, Plaintiff has no claim based on the March 3 tests because the tests would not be offensive to a reasonable person. The tests were minimally intrusive and were invalid. As

10

described in Ex. C, the tests involved swishing a cotton swab in his mouth.  No blood was drawn.  Moreover, the results were invalid and consequently no information – private or otherwise could be obtained from the tests.  See  High-Tech Institute, 972 P.2d at 1069-70 [noting that relevant intrusion was not the test, but the information obtained].)

C.      **Plaintiff States No Claim For Violation of Lawful Off Work Activities Statute.**

For Plaintiff's third cause of action, he alleges that MillerCoors violated C.R.S. § 24-34-402.5(1).  Specifically, he alleges that MillerCoors discharged Plaintiff for using medical marijuana during non-working hours.  (Compl. ¶ 66.)

Colorado Revised Statutes § 24-34-402.5 prohibits an employer from terminating an employee "due to that employee's engaging in any lawful activity off the premises of the employer during nonworking hours."  The statute creates a cause of action for intentional discrimination.  See Robert C. Ozer, P.C. v. Borquez, 940 P.2d 371, 375 (Colo. 1997) ("a jury instruction submitted pursuant to this statute would necessarily include an element providing that the employee was discharged because he or she engaged in lawful activity . . .").  Employers may raise a defense that the employer's restriction on off-work activities "relates to a bona fide occupational requirement or is reasonably and rationally related to the employment activities and responsibilities of a particular employee or a particular group of employees . . ." or "is necessary to avoid a conflict of interest with any responsibilities to the employer or the appearance of such a conflict of interest."  C.R.S. § 24-34-402.5.

Plaintiff wrongly assumes that "lawful" in this statute is restricted in meaning to Colorado law, and he alleges that medical marijuana use is lawful in Colorado.  (Compl. ¶¶ 59, 60.)  The statute however is not limited to activities that have been de-criminalized at the State-

level, such as the Colorado medical marijuana laws.  The statute states only that the employee's conduct must be 'lawful."  C.R.S. § 24-34-402.5.  Any marijuana use remains unlawful under federal law.  21 U.S.C. § 812(a); see also People v. Watkins, 2012 Colo. App. LEXIS 160 (Colo. App. Feb. 2, 2012) (the terms of a criminal defendant's probation were violated by his possession of medical marijuana, as such possession was a federal offense, notwithstanding his possession of medical marijuana card) (no published decision, copy attached as Ex. D), cert. denied, 2012 Colo. LEXIS 377 (Colo. May 29, 2012); James v. City of Costa Mesa, 684 F.3d 825, 834 (9th Cir. 2012) ("doctor-supervised marijuana use" permitted under California state medical marijuana law remains "an illegal use of drugs" under the federal Americans with Disabilities Act).  Even if MillerCoors had discharged Plaintiff, not for his positive drug test, but merely for using marijuana away from work, this statute would not apply.

Moreover, Plaintiff himself alleges that MillerCoors did not have information, other than Plaintiff's own assertions, that Plaintiff ingested marijuana off work.  The Medical Review Officer's report received by MillerCoors said nothing about how long it had been since Plaintiff had ingested marijuana.  (Compl. ¶ 25.)  Plaintiff's allegations therefore demonstrate that MillerCoors tested Plaintiff for drugs following an accident; that during the accident Plaintiff engaged in conduct that MillerCoors considered to be unsafe; and that the test came back positive for marijuana, giving no indication that the marijuana was consumed off-site.  (Id. ¶¶ 21, 22, 27, 28.)  Insofar as Plaintiff does not allege that MillerCoors had knowledge that Plaintiff's positive test results were due specifically to off-site and off-duty use of medical marijuana, his allegations fail to show that MillerCoors terminated his employment because of the required discriminatory intent.  Robert C. Ozer, P.C., , 940 P.2d at 375..

12

In addition, MillerCoors' alleged restriction on the use of medical marijuana off work would relate to a bona fide occupational requirement or be reasonably and rationally related to Plaintiff's employment activities. MillerCoors has a drug-free workplace policy. The policy specifically extends to non-working activities that threaten the integrity of Company operations. As applied here, MillerCoors picked out Plaintiff for a drug test, not randomly, but based on his admitted involvement in an accident that resulted in damage to a building. (Compl. ¶ 22.) The absence of any trace of marijuana or THC metabolites in his system, following his involvement in an accident (and an accident involving unsafe conduct on his part) is a bona fide occupational requirement.

Plaintiff specifically alleges that his use of medical marijuana did not require any accommodation by MillerCoors. (Compl. ¶ 31 ["Mr. Curry did not require any accommodation for this treatment . . ."]). This allegation was an effort to side-step the provision in Colorado's Constitutional amendment that provides: "[n]othing in this section shall require any employer to accommodate the medical use of marijuana in any work place." Colo. Const. art XVIII § 14(10)(b). By asserting that MillerCoors did not have to accommodate his medical marijuana use on the job, Plaintiff hopes that the Court will infer the opposite is true – that MillerCoors was required to accommodate his off-the-job use. But this position contradicts Colorado law. As the Colorado Court of Appeals noted, this language does <u>not</u> require employers to accommodate employees' off-site use of medical marijuana. <u>Benoir</u>, 262 P.3d at 976. In <u>Roe v. TeleTech Customer Care Mgmt. (Colo.), LLC</u>, 257 P.3d 586, 591 (2011) (cited in <u>Benoir</u>, 262 P.3d at 976), the Washington Supreme Court, interpreting similar language, ruled that a provision "against an obligation to accommodate *on-site* use does not require reading into [the statute] an

13

implicit obligation to accommodate *off-site* medical marijuana use" (emphasis added).  The language "does not regulate the conduct of a private employer or protect an employee from being discharged because of authorized medical marijuana use."  Id. at 591-92.

Because the Colorado Constitution does not create a duty to accommodate any use of medical marijuana by Colorado employees, such employees are in the same position relative to employer drug tests as they were in 2005.  The Colorado Court of Appeal's decision in Slaughter therefore indicates applicable Colorado law – employers may lawfully discharge an employee for violating the employer's written drug policy.  107 P.3d at 1170.

**D.     Plaintiff Has No Claim For Inquiring About Plaintiff's Medical Marijuana Status.**

Plaintiff's last cause of action is for violation of C.R.S. § 24-34-402(1)(d).[5]  Plaintiff alleges  that "MillerCoors' drug-free workplace policy makes an inquiry in connection with membership that expresses a specification as to disability, specifically membership as a medical marijuana patient."  (Compl. ¶ 69.)

Plaintiff's references to the statute are unclear and misleading due to his liberal editing of the text and use of ellipses.  The statute, in full, provides that it is a discriminatory or unfair employment practice:

> For any employer, employment agency, or labor organization to print or circulate or cause to be printed or circulated any statement, advertisement, or publication, or to use any form of application for employment or membership, or to make any inquiry in connection with prospective employment or membership that expresses, either directly or indirectly, any limitation, specification, or discrimination as to disability, race, creed, color, sex, sexual orientation, religion, age, national origin, or ancestry or intent to make any such limitation, specification, or discrimination, unless based upon a bona fide occupational qualification or required by and given to an agency of government for security reasons;

---

[5] Plaintiff mistakenly cites C.R.S. § 24-34-401(1)(d), but the quotation clarifies the intended reference to § 402.

14

C.R.S. § 24-34-402(1)(d).

### 1. Plaintiff's Claim Misconstrues The Statute.

Plaintiff's claim completely mischaracterizes the statute. Section 24-34-402(1)(d) makes unlawful any attempt to limit employees to select groups based on protected characteristics. For example, an employer may not advertise for white employees only or for 100% healthy physical specimens. Plaintiff alleges that MillerCoors violated this provision by making "an inquiry" concerning his "membership as a medical marijuana patient." (Compl. ¶ 69.) In the context of this statute, "membership" clearly is a reference to membership in a labor organization. Moreover, the statute only restricts "inquiries" with regard to prospective employees, not incumbent employees such as Plaintiff.

### 2. Plaintiff Failed To Exhaust Administrative Remedies.

For any claim under C.R.S. § 24-34-402(1)(d), the complainant must exhaust administrative remedies. C.R.S. § 24-34-306(14) ("No person may file a civil action in a district court in this state based on an alleged discriminatory or unfair practices prohibited by parts 4 to 7 of this article without first exhausting the proceedings and remedies available to him under this part 3 . . . ."). Here, Plaintiff's Charge of Discrimination made no mention of any statement, advertisement or publication by MillerCoors that indicates any limitation, specification or discrimination concerning disability. (Ex. B.) Plaintiff has failed to exhaust his administrative remedies concerning this claim.

### 3. MillerCoors' Policy Is A Based On A Bona Fide Occupational Qualification.

Even if MillerCoors' policy otherwise violated Section 24-34-402(1)(d), C.R.S., the policy and its drug testing provisions are plainly "based upon a bona fide occupational

15

qualification." An employer may issue a written drug policy and enforce it with post-incident testing and discipline. Slaughter, 107 P.3d at 1170. Providing drug-free workplaces is an express goal of federal policy. 41 U.S.C § 8102; 42 U.S.C. § 12114(c)(3) (employers "may require that employees behave in conformity with the requirements established under chapter 81 of title 41.").

Given the actual language of the statute, Plaintiff's failure to exhaust administrative remedies, and the fact that passing a test for federally outlawed drugs is a bona fide occupational qualification, the Court should dismiss this claim.

## III.   CONCLUSION

For all the foregoing reasons, Defendant respectfully requests that the Court dismiss Plaintiff's claims and grant Defendant its costs and such other relief as the Court deems appropriate.

Respectfully submitted this 24th day of September, 2012.

s/ William A. Wright _____
William A. Wright, Esq.
SHERMAN & HOWARD L.L.C.
633 Seventeenth Street, Suite 3000
Denver, Colorado 80202
Telephone:  (303) 299-8086
Facsimile:   (303) 298-0940
E-mail:  wwright@shermanhoward.com

Attorneys for Defendant

16

**CERTIFICATE OF SERVICE**

  I hereby certify that on this 24th day of September, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will serve a copy via email upon the following:

  Robert J. Corry, Jr.
  Robert.corry@comcast.com


                s/ Mary Ann Meise_____