IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-02471-JLK

PAUL CURRY,

        Plaintiff,

v.

MILLERCOORS, INC.,

        Defendant,

## REPLY IN SUPPORT OF MOTION TO DISMISS

        Defendant MillerCoors LLC respectfully submits this Reply in support of its Motion to Dismiss (Doc. No. 8). Plaintiff's Response in Opposition to Defendant's Motion to Dismiss (Doc. No. 10) fails to cure the deficiencies in the Complaint.

### PLAINTIFF'S ALLEGATIONS

        Plaintiff's Response confirms the key allegations from the Complaint, demonstrating that Plaintiff states no claim on which the Court may grant relief. Plaintiff identifies various health conditions and injuries he experienced in 2009 and earlier. (Resp. at 6-7.) The MillerCoors Medical Center knew of Plaintiff's conditions since at least April 2009. (Id. at 7.) Plaintiff does not complain about any action by MillerCoors occurring before 2011. (Id. at 2, 5.) Plaintiff makes no allegations concerning any discriminatory animus on the part of Defendant.

        In January 2011, MillerCoors distributed a written policy and discussed its post-incident drug and alcohol testing policy with employees, including Plaintiff. (Resp. at 2; Ex. A to Mot. at

1, 11.)[1]  The policy stated that an employee who tests positive in a post-incident drug screen would be subject to disciplinary action up to and including termination.  (Ex. A to Mot. at 4.)  MillerCoors specifically advised its employees that "drugs" included marijuana.  (Id. at 7.)  Plaintiff does not dispute that he had notice of the policy and the inclusion of marijuana.  Despite the policy, Plaintiff continued to use medical marijuana.  (Resp. at 2.)

As part of the policy on post-incident testing, MillerCoors required that employees who have a recommendation for medical marijuana report the recommendation to the MillerCoors Medical Center or Human Resources.  (Ex. A to Mot. at 8.)  This report was to allow MillerCoors to determine whether the situation presented a safety risk to the employee or others.  (Id.)  Plaintiff does not contend that the prescription drug policy violates any law.  Plaintiff failed to notify MillerCoors Medical Center or Human Resources that he had a recommendation to use marijuana.  (Compl. ¶¶ 26, 52.)

Plaintiff was involved in an accident at work at MillerCoors's facility.  (Resp. at 3 [citing Compl. ¶ 20].)  His involvement included standing on a hand-railing on the roof, waving his arms to attract a crane-operator's attention.  (Id. [citing Compl. ¶ 21].)  MillerCoors issued Plaintiff a written warning for his unsafe conduct.  (Compl. ¶¶ 21, 26, 27.)

Moreover, because of his involvement in the accident, MillerCoors's post-incident testing policy required Plaintiff to take a drug screen.  (Resp. at 3 [citing Compl. ¶¶ 20-24].)  A Medical Review Officer certified the results of the drug screen as positive for cannabinoids.  (Id. at 4 [citing Compl. ¶ 28].)  The result did not (and could not) specify whether the cannabinoids found in Plaintiff's system were active or merely residual.  (Id.)  Plaintiff makes no allegation that he

---

[1] Plaintiff does not object to the documents MillerCoors attached to its Motion to Dismiss.

was not subject to testing, that the test was a false positive or that MillerCoors applied the test in a disparate manner.  On March 14, 2011, MillerCoors discharged Plaintiff for testing positive for marijuana in violation of its drug-free workplace policy.  (Resp. at 4, 8, 13.)

## ARGUMENT

**A.    Plaintiff States No Claim Based On Disability Discrimination.**

   1.    <u>Plaintiff Fails To Allege A Violation Of C.R.S. 24-34-402(1)(a)</u>.

MillerCoors first argued that Plaintiff fails to state a claim for disability discrimination under C.R.S. § 24-34-402(1)(a) because Plaintiff specifically alleges that MillerCoors discharged him for testing positive for "cannabinoids," i.e. for metabolites of marijuana.[2]  (Mot. at 4-5.)  Plaintiff does not distinguish the authorities MillerCoors cited for the proposition that Plaintiff's allegations do not state actionable disability discrimination.  (<u>See</u> Mot. at 5 [citing <u>Kosmicki v. Burlington N. & Santa Fe Ry. Co.</u>, 545 F.3d 649 (8th Cir. 2008) and 42 U.S.C. § 12114(c)(3)].)

In his Response, Plaintiff argues that discharging him for testing positive for medical marijuana was the same as discharging him for the treatment Plaintiff was using to manage the symptoms of his disabilities and, therefore, MillerCoors discharged Plaintiff "with regard to his disability."  (Resp. at 8-9.)  Plaintiff's Response relies on the wrong standard.  C.R.S. § 24-34-402(1)(a) makes it an unfair employment practice for an employer to discharge any person "because of disability."  The statute does not forbid discharge "with regard to a disability."

Moreover, Plaintiff's argument proves far too much.  By Plaintiff's argument, employers would be unable to enforce their standard policies against employee misconduct whenever the misconduct related to a disability.  Anti-discrimination law does not extend so far.  <u>See</u> EEOC,

---

[2] Plaintiff again cites C.R.S. § 24-34-401(1)(a).  (Resp. at 9.)  There is no such sub-paragraph.

3

<u>Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act</u>  ¶¶ 35, 36 (October 17, 2002) (explaining that an employer is not required to excuse a violation of a uniformly applied conduct rule that is job-related and consistent with business necessity, even if the misconduct is the result of a disability); <u>George v. Ute Water Conservancy Dist.</u>, 950 P.2d 1195, 1198 (Colo. App. 1997) (noting that federal law is persuasive in interpreting the Colorado Anti-Discrimination Act).

Here, Plaintiff's allegations are that he stood on a hand-railing, on a roof, waving his arms to attract a crane operator's attention. An accident ensued. MillerCoors performed a drug screen in accordance with company policy and found that Plaintiff had cannabinoids in his system at the time of his conduct. Because of his positive test, MillerCoors discharged Plaintiff. The alleged factual content of the Complaint does not "allow[] the court to draw the reasonable inference" that MillerCoors is liable for the conduct alleged even if the cannabinoids present in Plaintiff's system were related to treatment for a disability. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). <u>See</u> <u>also</u> <u>Smith v. U.S.</u>, 561 F.3d 1090, 1098 (10th Cir. 2009) (to avoid dismissal, plaintiff must plead sufficient facts to make his claim plausible on its face).

      2.      <u>Plaintiff's Reliance On The Dissent In *Beinor* Is Misplaced</u>.

Plaintiff attempts to distinguish <u>Beinor v. Industrial Claim Appeals Office</u>, 262 P.3d 970 (Colo. App. 2011), <u>cert</u>. <u>denied</u>, 2012 Colo. LEXIS 355 (Colo. May 29, 2012). (Resp. at 10-11). MillerCoors cited <u>Beinor</u> to show that the amendment to the Colorado Constitution decriminalizing medical marijuana under state law did not affect an earlier Colorado statute permitting employers legitimately to terminate an employee for testing positive for marijuana.

4

(Mot. at 5.) Beinor establishes that Slaughter v. John Elway Dodge Southwest/Autonation, 107 P.3d 1165 (Colo. App. 2005), remains good law. (Id.)

Without addressing Slaughter in this section, Plaintiff argues that the Beinor court did not address "'whether the amendment limits an employer from discharging an employee for using medical marijuana.'" (Resp. at 10 [quoting Beinor].) This quoted phrase however does not describe Plaintiff's claim and does not describe any possible claim under the Colorado Anti-Discrimination Act. Plaintiff's claim is that MillerCoors discharged him *for testing positive for medical marijuana in a post-incident drug test*. (Resp. at 4, 8, 13.) Although he also alleges that he used marijuana only for medical purposes, at home, and off work, Plaintiff asserts that MillerCoors discharged him because he tested positive at work, not because of his medical marijuana use. Medical marijuana users are not a protected class under the Colorado Anti-Discrimination Act and discharge for medical marijuana use is not a claim under that Act.

Plaintiff omits the sentence that follows his quotation from the Beinor court: "[W]e note that in the context of wrongful termination cases, language similar to section 14(10)(b) ('Nothing in this section shall require any employer to accommodate the medical use of marijuana in any work place.') has been interpreted not to require employers to accommodate employees' off-site use of medical marijuana." Beinor, 262 P.3d at 976-77 (citing Roe v. TeleTech Customer Care Mgmt. (Colo.), LLC, 257 P.3d 586, 591-92 (Wash. 2011)). Despite Plaintiff's argument over what Beinor does *not* say, this dicta in Beinor clearly warns against bringing a claim for wrongful discharge based on the medical marijuana amendment to the Colorado Constitution.

Plaintiff's further reliance on the dissenting opinion in Beinor is also misplaced. (Resp. at 10.) A dissenting opinion in the Colorado Court of Appeals is not binding on this Court. See

5

Wilson v. Sears, Roebuck and Co., 757 F.2d 948, 951 (8th Cir. 1985) (noting duty to follow state supreme court's majority decision in diversity case, even though a dissent was persuasive). Moreover, even if this Court were to follow the reasoning in the dissenting opinion, it could reach no conclusion relevant to this case. The quoted discussion from the dissenting opinion concerns § 14(10)(b) and its provision that employers have no duty to accommodate the medical use of marijuana "in any workplace." (Resp. at 10.) According to the dissenting opinion, the exclusion of a duty to accommodate the medical *use* of marijuana *in the workplace* does not also exclude a duty to accommodate the *mere presence* of marijuana in an employee's system, following use of medical marijuana at home. The dissent's conclusion at this stage then is that the Constitution does not expressly provide employers with a safe harbor to discharge an employee who tests positive for marijuana if the marijuana was used for approved medical purposes at home. However, this conclusion leaves Slaughter and C.R.S. § 8-73-108(5)(e)(IX.5) intact; they express restrictions other than Constitutional restrictions.

Further, the dissenting opinion in Beinor is not persuasive. Given the limitations on testing technology, urinalysis is incapable of distinguishing between current impairment by marijuana use and the "mere presence" of marijuana metabolites in the employee's body. See Nat'l Fed'n of Fed. Emps. v. Cheney, 884 F.2d 603, 609 (D.C.Cir. 1989) (agreeing that "a positive result indicates only that at some time in the past, maybe days or weeks before the test, the tested employee ingested a drug in some unknown quantity"). Therefore, as a matter of practice, to refuse to accommodate the use of medical marijuana in the workplace does involve detecting the "mere presence" of marijuana in the employee's body.

6

The dissenting opinion in Beinor does go further in passages that Plaintiff does not cite. The dissent finds the rest of the Constitutional amendment ambiguous, and resolves that ambiguity in favor of creating a Constitutional right to use medical marijuana. Beinor, 262 P.3d at 979-81. However, even this ultimate conclusion in the dissenting opinion is irrelevant in the current context. A Constitutional right to use medical marijuana would not imply that a private employer may not discharge an employee for a positive post-incident drug test any more than a Constitutional right to free speech prevents a private employer from prohibiting racist or sexist insults. As noted in the Beinor dissent, a Constitutional right to use medical marijuana would only imply that the state government could not deny the employee a governmental benefit. Id. at 981-82. Consequently, nothing in the Beinor dissenting opinion bears on MillerCoors's conduct or on the Plaintiff's claim under C.R.S. § 24-34-402(1)(a).

3.   Plaintiff Was Not "Qualified" Under C.R.S. § 24-34-402(1)(a).

MillerCoors specifically argued that, under MillerCoors' drug-free workplace policy, an individual who tests positive for a controlled substance (including marijuana) is not qualified for the position. (Mot. at 6.) Plaintiff's only response is the bald assertion that he "was otherwise qualified to perform his job." (Resp. at 9.) Plaintiff's failure to address MillerCoors's argument marks his abandonment of this claim. See Palmer v. Unified Gov't of Wyandotte County/Kansas City, 72 F.Supp.2d 1237, 1250 (D. Kan. 1999) (ruling failure to respond to argument was abandonment of the claim).

For all the foregoing reasons, the Court should dismiss Plaintiff's claim for disability discrimination. Plaintiff's well-pleaded factual allegations do not make any such claim at all plausible. The only plausible conclusion from Plaintiff's allegations is that MillerCoors

7

discharged Plaintiff when he tested positive for marijuana in a regular post-incident drug screen. Iqbal, 556 U.S. at 678.

**B.     Plaintiff Has No Claim Based On MillerCoors's Policy On Reporting Medical Marijuana Recommendations.**

Under a single heading, Plaintiff's Response marshals several attacks on MillerCoors's policy requiring employees to inform the Medical Center or Human Resources of any recommendation to use medical marijuana. Plaintiff's claims on this issue were (1) intrusion on seclusion (Compl. ¶¶ 38-57) and (2) violation of C.R.S. § 24-34-402(1)(d). (Id. ¶¶ 68-74.) To these claims, Plaintiff's Response attempts to add a claim for violation of the Colorado Constitution. (Resp. at 15-16.) Plaintiff's Response does not argue that MillerCoors invaded his privacy by conducting the drug screen and therefore Plaintiff has abandoned any such claim. See Palmer, 72 F.Supp.2d at 1250.

    1.     Plaintiff Has No Claim Under the Colorado Constitution.

Plaintiff's Complaint did not pretend to state a claim against MillerCoors arising solely under the Colorado Constitution. In the Complaint, Plaintiff used the provisions under the Colorado Constitution and statutes, not as the basis for a separate claim, but to support the existence of a legal duty for a tort claim. (Compl. ¶¶ 41-42.) In the Response, Plaintiff contends that MillerCoors's policy is itself "unconstitutional." (Resp. at 15-16.)

Even if the Court were to allow Plaintiff to add a claim directly under the Colorado Constitution, the amendment would be futile. His Response fails to support any private right of action arising under the Colorado Constitution for "forcing Plaintiff to waive his right to the confidentiality of his medical marijuana patient status." (Resp. at 16.) At most, Plaintiff invokes Colorado statutes to argue that making public information from a record in the marijuana registry

8

would be a misdemeanor.  (Id.)  "Where a statute creates legal duties and provides a particular means for their enforcement, the designated remedy excludes all others."  Silverstein v. Sisters of Charity of Leavenworth Health Servs. Corp., 559 P.2d 716, 718 (Colo. App. 1976).  Moreover, Plaintiff does not allege that MillerCoors made public any information from a registry record.  (See Mot. at 9 [arguing that Colorado Constitution and statutes merely protect the content of the state health agency's database].)

        2.        Plaintiff Has No Tort Claim Based On MillerCoors's Policy.

In the Motion, MillerCoors argued that Plaintiff could not state a claim for intrusion upon seclusion because he did not comply with the policy and disclose his status as a medical marijuana user.  (Mot. at 7.)  Without intrusion, there is no tort.  MillerCoors also argued that any intrusion the policy created was reasonable and not for an unwarranted purpose.  (Id. at 8.)

In his Response, Plaintiff quotes legal propositions and conclusions from paragraphs 46 to 57 of the Complaint.  (Compare Compl. ¶¶ 46-57 with Resp. 16-18.)  Plaintiff's only argument concerning his original tort claim is an attempt to distinguish Slaughter v. John Elway Dodge Southwest/Autonation, 107 P.3d 1165, 1170 (Colo. App. 2005).  (Resp. at 18-19.)

MillerCoors cited Slaughter for the legal standard that a claim for intrusion upon seclusion requires showing "an unreasonable manner of intrusion or an intrusion for an unwarranted purpose."  (Mot. at 7.)  MillerCoors also cited Slaughter for the proposition that employers may legitimately conduct drug testing.  (Id. at 8.)  Plaintiff attempts to distinguish Slaughter on the grounds that the marijuana use in that case was recreational and unprotected by the amendment to the Colorado Constitution and state statutes providing for medical marijuana use. As discussed above, Slaughter remains good law in Colorado despite changes to the

9

Colorado Constitution and statutes.  See Beinor, 262 P.3d at 977.  Although Plaintiff concludes this section of his Response with the assertion that he qualifies for the protections of C.R.S. § 24-34-402.5(1), Plaintiff makes no attempt to explain how amendments to the Colorado Constitution or new statutes concerning medical marijuana use render tortious an employer's policies concerning disclosure of a recommendation for medical marijuana.

In any case, without a plausible allegation that MillerCoors's policy was unreasonable or for an unwarranted purpose, Plaintiff does not state a claim for intrusion upon seclusion.  Plaintiff's own unsafe conduct and involvement in a workplace accident, and his subsequent positive test for marijuana, effectively demonstrate the legitimate reasons for policies like that at issue in this case.  Inquiring, in advance, about an employee's use of substances that might affect a drug screen is entirely reasonable.  See Mares v. Conagra Poultry Co., 971 F.2d 492, 496 (10th Cir. 1992) (questions to employees about their use of prescription drugs in the context of a drug testing program do not constitute a significant intrusion into seclusion) (cited in Mot. at 8.)

Because Plaintiff has failed to identify among his allegations any support for his tort claim, the Court should dismiss the claim with prejudice.

3.   Plaintiff Has No Claim Under C.R.S. § 24-34-402(1)(d).[3]

a.   *Plaintiff has failed to exhaust administrative remedies for this claim.*  In the Motion, MillerCoors argued that Plaintiff failed to exhaust administrative remedies for a claim under C.R.S. § 24-34-402(1)(d). (Mot. at 15-17.)  Plaintiff failed to respond to this argument.  For this reason alone, the Court should dismiss the claim.  C.R.S. § 24-34-306(14)

---

[3] Plaintiff again cites C.R.S. § 24-34-401(1)(d).  There is no such subparagraph.

10

SPRINGS/956346.2

("No person may file a civil action . . . without first exhausting the proceedings and remedies available to him under this part 3"); Palmer, 72 F.Supp.2d at 1250 (finding claim abandoned).

      b.    *Plaintiff's Complaint concerns only an "inquiry."*  In the Complaint, Plaintiff's claim under C.R.S. § 24-34-402(1)(d) is limited to a supposed preemployment inquiry by MillerCoors concerning employees' recommendations for medical marijuana. (Compl. ¶¶ 69, 74; Mot. at 15.)  Without comment, Plaintiff attempts to shift his ground from an "inquiry" to a statement that expresses a "specification" as to disability. (Resp. at 14.)

Even if the Court were to allow Plaintiff to amend his Complaint to state a claim for a "specification," the amendment would be futile.  MillerCoors's policy does not directly or indirectly limit its employees.  See EEOC v. C.R. England, Inc., 644 F.3d 1028, 1041 (10th Cir. 2011) (claim under similar provision at 42 U.S.C. § 12112(b)(1) fails absent a showing of adverse effect of the alleged classification).  Instead, the policy allows MillerCoors to make any necessary adjustments to work assignments. (Ex. A to Mot at 8.)

      c.    *The policy is based on a bona fide occupational qualification.*  Moreover, as MillerCoors argued in the Motion, the policy is based on a bona fide occupational qualification – preservation of a safe work environment. (Mot. at 15-16.)  Plaintiff's only response to this argument is the bald assertion that "there is no bona fide occupational qualification requiring medical marijuana patients to disclose their patient status." (Resp. at 14.) This mere assertion does not make Plaintiff's claim plausible. Iqbal, 556 U.S. at 678.

**C.**    **Plaintiff States No Claim For Violation of C.R.S. § 24-34-402.5(1).**

MillerCoors argued that Plaintiff's claim under C.R.S. § 24-34-402.5(1) fails because the conduct at issue – Plaintiff's having cannabinoids in his system at work – remains illegal under

11

federal law. (Mot. at 11.) MillerCoors further argued that Plaintiff's allegations that (a) MillerCoors lacked information concerning the timing of Plaintiff's consumption of marijuana, (b) Plaintiff engaged in unsafe conduct at work, (c) MillerCoors conducted a drug screen in accordance with its post-incident testing policy, and (d) Plaintiff failed the drug screen, did not make plausible a claim that MillerCoors discriminated against Plaintiff because of his off-work conduct. (Id. 12.) Instead, the allegations plainly show MillerCoors acted on Plaintiff's conduct at work. Finally, MillerCoors argued that its drug free workplace and post-incident testing policies were related to a bona fide occupational requirement and reasonably and rationally related to Plaintiff's employment activities. (Id. at 13.) Plaintiff makes no effective response to any of MillerCoors's arguments.

    1. Plaintiff's Reliance On The Dissenting Opinion In *Beinor* Is Misplaced.

Plaintiff's Response splits its discussion of C.R.S. § 24-34-402.5(1) in two. (Resp. at 11-13, 19-34.) First, Plaintiff returns to the dissenting opinion in Beinor. (Id. at 12.) Citing the dissenting opinion, Plaintiff argues that the Colorado Constitutional amendment made the use of medical marijuana "legal" under Colorado law. (Id. at 12.) This entire argument misses the point. Even if Plaintiff were citing a precedential opinion, the point does not address any of MillerCoors's arguments in the Motion. See discussion supra.

    2. Plaintiff's Citations To Other Federal Law Are Irrelevant.

Plaintiff also argues in a footnote that various aspects of federal law provide limited recognition of legal rights affecting marijuana, including a patent on cannabinoids of marijuana, a federal program for medical testing on marijuana, and laws applicable in the District of

12

Columbia. (Resp. at 19 n. 2.) Plaintiff does not, and could not, argue that any of these federal laws render his own conduct legal under federal law.

3. Requiring An Employee Not To Have Marijuana In His System When Working Is A Bona Fide Occupational Requirement.

Plaintiff's Response also asserts that MillerCoors "has presented no evidence that Plaintiff's off-duty use of medical marijuana relates to a bona fide occupational requirement or that Plaintiff was impaired by marijuana during working hours." (Resp. at 13.) MillerCoors's Motion relies on Plaintiff's allegations and documents central to those allegations. Plaintiff tested positive for metabolites of marijuana. (Id. at 4.) An employer's efforts to create a safe and drug-free workplace are bona fide occupational requirements for any employee. See Ross v. Ragingwire Telecom., Inc., 174 P.3d 200, 42 Cal.4th 920, 929-30 (Cal. 2008) (citing employer's legitimate interest avoiding well-documented problems associated with the abuse of drugs and alcohol by employees). See also 42 U.S.C. § 12114(c)(3) (employer may require employees to conform with requirements of Drug Free Workplace Act [41 U.S.C. §§ 8101-8106]); 41 U.S.C. § 8102 (requiring public contractors to have and enforce policies against employee use at work of "controlled substances," including substances on Schedules I to V of 21 U.S.C. § 812.); 21 U.S.C. § 812(c)(c)(17) (listing THC on schedule I).

Plaintiff contends that the marijuana in his system at the time of the workplace accident was "residual" and "non-active." (Compl. ¶ 62.) Marijuana drug tests generally show "inactive metabolites." Cheney, 884 F.2d at 606 n. 5 (with marijuana . . . the tests reveal the presence of the inactive product resulting from the body's breakdown of the drugs' metabolites"). In any case, here, Plaintiff provides no factual allegation to support the conclusion that the marijuana in his body was not affecting his conduct. National Institutes of Health, HHS, NIDA InfoFacts:

13

Understanding Drug Abuse and Addiction (November 2010) (cited in Resp. at 22) ("Research has shown that, in chronic users, marijuana's adverse impact on learning and memory can last for days or weeks after the acute effects of the drug wear off. As a result, someone who smokes marijuana every day may be functioning at a suboptimal intellectual level all of the time.") Plaintiff's unsafe conduct on March 3, 2009 as well as his involvement in the workplace accident gave good reason to test him for drug use. A Medical Review Officer then certified that Plaintiff tested "positive" for marijuana use (Compl. ¶ 28.) Marijuana remains an illegal drug under federal law, and therefore an employer may remove an employee who tests positive, regardless of the employee's denials of impairment and other proffered excuses and protests.

4. Plaintiff's Constitutional Arguments Are Fallacious.

Plaintiff argues at length that the federal Controlled Substances Act ("CSA") is unconstitutional. This Court need not reach this issue. As explained above, Plaintiff's own allegations make clear that MillerCoors discharged him for events that occurred at work and not for his mere use of marijuana off work. Plaintiff was at work when he stood on the handrail on the roof waving his arms, and he was at work when the crane dropped the equipment punching a hole in the roof. Plaintiff took a drug screen as a result of MillerCoors's post-incident testing policy and Plaintiff tested positive. Where and when Plaintiff used the marijuana is not at issue in Plaintiff's claim. Moreover, as described above, drug-free workplace programs are bona fide occupational qualifications and Plaintiff makes no effective argument to the contrary.

    a. *Plaintiff has not notified the Attorneys General.* Plaintiff has not complied with the requirements of D.C.COLO.LCivR 24.1(A) or Fed.R.Civ.P. 5.1(a) to provide notice to the Attorney General of the United States. Consequently, the Court has had no opportunity to

14

comply with 28 U.S.C. § 2403, and the Attorney General has had no opportunity to intervene to defend the state interest in controlling marijuana. Plaintiff's arguments on Constitutionality are equally directed against Colorado's laws governing the non-medical use of marijuana, and Plaintiff should also provide notice of his arguments to the Colorado Attorney General.

        b.    *Plaintiff's argument concerning bodily integrity fails*. Plaintiff's first Constitutional argument is that the CSA violates a substantive due process right to bodily integrity. (Resp. at 19-27.) Plaintiff's argument rests on verbal sleight of hand. Plaintiff argues that the CSA is intended to curb drug abuse. (Id. at 20.) He then reasons that drug abuse is a disease. (Id. at 21.) He reaches this conclusion, however, by conjoining "drug abuse" with "drug addiction" and providing legal citations for the proposition that narcotic *addiction* is a disease. (Id.) From the faulty sub-conclusion that drug abuse is a disease, Plaintiff argues that criminal investigations, prosecutions and civil forfeitures under the CSA are the unlicensed practice of medicine and "mandatory preventative medical treatment." (Id. at 23.) Because the Supreme Court has recognized a liberty interest in being free from forced medical treatment, Plaintiff concludes that the government may pursue criminal investigations, prosecutions and civil forfeitures under the CSA only with the informed consent of the drug abuser. (Id. at 24-25.)

Regardless of whether the federal or state Attorneys General offer a defense of the state interests served by federal and state drug control statutes, this Court should reject Plaintiff's "bodily integrity" argument. Without confusing the conduct of drug abuse with the condition of addiction, the argument would never get off the ground. Drug *abuse* is not a medical condition. Investigating and prosecuting drug abuse is not the practice of medicine and the criminal's informed consent is not a requirement for prosecution.

15

      c.    *Plaintiff's argument concerning the First Amendment fails.*  Plaintiff's second Constitutional argument is that the CSA interferes with individuals' right to the free expression of their thoughts and opinions.  (Resp. at 27.)  Here, Plaintiff asserts first that marijuana use creates "unique chemical information."  (Id.)  He notes that marijuana use affects the parts of the brain that regulate cognitive functions and sensory perception, and that marijuana use results in euphoria, relaxation, heightened sensory perception, laughter, altered perception of time, and increased appetite.  (Id.)  Plaintiff then argues that freedom of speech includes freedom to access information and ideas, and that the state may ban one mode of obtaining an idea only if doing so does not create a serious risk of infringing on individuals' private thoughts.  (Id. at 29.)  Plaintiff then claims that the CSA seriously infringes individuals' private thoughts because it does not allow for any distribution of marijuana.  (Id.)

    The lynchpin of Plaintiff's argument is the connection between the sensations caused by marijuana use and information protected by the First Amendment.  Plaintiff ties these two premises together in a single paragraph, citing a dissenting opinion in Olmstead v. U.S., 277 U.S. 438, 478 (1928).  (Resp. at 28.)  Justice Brandeis dissented from the Court's ruling in Olmstead and argued that seizure of material things interfered with individuals' emotions and sensations and therefore "must be deemed a violation of the Fourth Amendment."  Id.  Justice Brandeis's dissenting opinion does not even attempt to argue that marijuana use is the kind of information protected by the First Amendment.

    Moreover, Plaintiff does not argue that marijuana use is the only way available for individuals to experience euphoria or heightened senses.  The argument therefore never demonstrates that the CSA seriously infringes individuals' private thoughts.

16

Plaintiff's argument does not warrant protecting marijuana use as a form of self-education. By Plaintiff's reasoning, individuals have a right to every form of physical or chemical interference with their brains. Even if individuals have such a right, it is stretching the language of the First Amendment to say that the right is guaranteed by freedom of speech.

5. The Court May Not Overrule The Colorado Supreme Court Or Usurp Administrative Judgment.

Plaintiff's final attack on the CSA is a request that this Court explicitly overrule the Colorado Supreme Court's decision in Colorado v. Summit, 517 P.2d 850, 851 (Colo. 1974). In Summit, the Colorado Supreme Court considered whether the Colorado legislature reasonably classified marijuana as a narcotic rather than as a dangerous or hallucinogenic drug. Id. However "reluctantly," the Colorado Court determined the classification was reasonable. Id. at 851. This Court cannot overturn that determination. See Chapman v. LeMaster, 302 F.3d 1189, 1196 (10th Cir. 2002) (state supreme court's determination of state law is "a determination of state law over which this court has no power to question.") Similarly, the Court should not attempt to overturn the classification of marijuana under the CSA. U.S. v. Quaintance, 315 Fed. Appx. 711, 714, 2099 U.S. App. LEXIS 4378 at **8 (10th Cir. Mar. 3, 2009) (defendants' "argument that the case should be dismissed because marijuana has medical uses and therefore does not meet the criteria for Schedule I drugs under the Controlled Substances Act" is a matter for administrative or legislative judgment).

Moreover, even if the Court did overturn the state classification of marijuana as a narcotic instead of a dangerous drug, it would not make marijuana use a legal off-work activity. The change would not affect the legality of non-medical marijuana use in Colorado or any use of marijuana under federal law. See Summit, 517 P.2d at 852-53 ("Counsel for the defendants

17

agree that the drug is one which under the police power for the protection of the health and welfare of society is a proper subject of legislative control.")  The change also could not have retroactive effect to render MillerCoors's prior acts unjustified.  Landgraf v. USI Film Products, 511 U.S. 244, 266 (1994) (noting presumption against retroactivity); 21 U.S.C. § 811(h) (providing for prospective reclassification of substances).

## CONCLUSION

For all the foregoing reasons, Defendant respectfully requests that the Court dismiss Plaintiff's claims with prejudice and grant Defendant its costs and such other relief as the Court deems appropriate.  Plaintiff's allegations search Colorado law for an employment claim related to the medical use of marijuana.  The alleged facts in this case make no such claim plausible.  Plaintiff was involved in an accident at work, and, pursuant to the employer's regular policies, he took and failed a drug test.  Under established Colorado law, discharging an employee under these circumstances is lawful, regardless of whether the employee consumed marijuana on a medical recommendation, at home or off work.  Otherwise, employers would have no ability to regulate dangerous workplace conduct arising from the use of marijuana.

Respectfully submitted this 29th day of October, 2012.

> s/ William A. Wright
> William A. Wright, Esq.
> SHERMAN & HOWARD L.L.C.
> 633 Seventeenth Street, Suite 3000
> Denver, Colorado 80202
> Telephone:  (303) 299-8086
> Facsimile:   (303) 298-0940
> E-mail:  wwright@shermanhoward.com
>
> Attorneys for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of October, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will serve a copy via email upon the following:

Robert J. Corry, Jr.
Robert.corry@comcast.com

Travis B. Simpson, Esq.
travisbsimpson@gmail.com

                 s/ Mary Ann Meise _____