IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-CV-02471-JLK

PAUL CURRY,

    Plaintiff,

v.

MILLERCOORS, INC.,

    Defendant,

---

## NOTICE OF CLAIM OF UNCONSTITUTIONALITY

---

Plaintiff, Paul Curry, through undersigned counsel, hereby provides notice to the United States Attorney General, the United States Attorney, and the Attorney General for the State of Colorado that Plaintiff has challenged the constitutionality of 21 U.S.C. § 801-971 as well as Colorado Revised Statute § 18-18-406, and as grounds states as follows;

**I.**   **Statutes Challenged**

    A.    21 U.S.C. § 801-971 (as pertaining to marijuana and marijuana concentrate)

    B.    C.R.S. § 18-18-406

**II.**   **Grounds On Which Unconstitutionality Is Asserted**

    A.    <u>The CSA Violates The Fundamental Right To Bodily Integrity</u>

The Fourteenth Amendment of the U.S. Constitution guarantees the right to bodily integrity. The Federal Controlled Substances Act ("CSA") infringes upon this

1

fundamental right by mandating preventative medical treatment upon individuals without their informed consent. The CSA's primary purpose is to prevent drug abuse. Drug abuse is a disease. The CSA's preventative treatment of drug abuse violates Plaintiff's fundamental right to free from unwanted medical treatment and should not preclude Plaintiff from having his claims heard.

    *i.* *The Right to Bodily Integrity is Fundamental*

"In ascertaining whether a right is fundamental, a court must determine whether the right is "explicitly or implicitly guaranteed by the Constitution." NORML v. Bell, 488 F.Supp. 123, 133 (D.D.C. 1980); *see also* San Antonio Independent School District v. Rodriguez, 411 U.S. 1, 33-34 (1973).

The right to be free from unwanted medical attention "*is* deeply rooted in this Nation's traditions... and has long been 'firmly entrenched in American tort law' and is securely grounded in the earliest common law." Cruzan v. Dir., Mo. Dep't of Health, 497 U.S. 261, 306 (1990). *see also* Mills v. Rogers, 457 U.S. 291, 294 n.4 (1982). State Supreme Courts across America have affirmed that "each man is considered to be master of his own body, and he may, if he be of sound mind, expressly prohibit the performance of lifesaving surgery, or other medical treatment." Natanson v. Kline, 186 Kan. 393, 406-407 (1960). "The inviolability of the person" has been held as "sacred" and "carefully guarded" as any common-law right." Cruzan v. Dir., Mo. Dep't of Health, 497 U.S. 261, 305 (1990); *see also* Union Pacific R. Co. v. Botsford, 141 U.S. 250, 251-252 (1891). Thus, freedom from unwanted medical attention is unquestionably among those

principles "so rooted in the traditions and conscience of our people as to be ranked as fundamental." id.; *see also* Snyder v. Massachusetts, 291 U.S. 97, 105 (1934).

### ii. *Drug Abuse Is A Disease.*

Drug abuse and addiction is a complex disease of the brain that results from recurring drug intoxication and is affected by genetic, developmental, experiential, and environmental factors. The Supreme Court has long recognized that narcotic addicts, as well as alcoholics, are "diseased and proper subjects for [medical] treatment." Robinson v. California, 370 U.S. 660, 667 (U.S. 1962). In Robinson, Justice Stewart emphasized that criminalization of narcotic addiction was unconstitutional; "Even one day in prison would be a cruel and unusual punishment for the 'crime' of having a common cold." id.

The National Institute on Drug Abuse states that "many people… view drug abuse and addiction as strictly a social problem and may characterize those who take drugs as morally weak. One very common belief is that drug abusers should be able to just stop taking drugs if they are only willing to change their behavior. What people often underestimate is the complexity of drug addiction—that it is a *disease* that impacts the brain and because of that, stopping drug abuse is not simply a matter of willpower."[1]

### iii. *The Federal CSA Constitutes Medical Treatment Of Drug Abuse.*

The primary objectives of the CSA are to "*conquer drug abuse* and to control the legitimate and illegitimate traffic in controlled drugs." Gonzales v. Raich, 545 U.S. 1, 12

---

[1] NIDA InfoFacts: Understanding Drug Abuse and Addiction, NIDA, http://www.nida.nih.gov/infofacts/understand.html (last visited July 26, 2012). (emphasis added)

(2005) (emphasis added). In the CSA, Congress established five "schedules" of "controlled drugs." id. at 13 *see also* 21 U.S.C. § 802(6). Controlled drugs are placed on a particular schedule based on their *potential for abuse*, their accepted medical use in treatment, and the *physical and psychological consequences of abuse of the drug*. id. at 14 *see also* 21 U.S.C. § 812(b) (emphasis added).

Marijuana is classified as a Schedule I controlled drug. 21 U.S.C. § 812(c), Sched. I(c)(10). For a drug to be designated a Schedule I controlled drug, it must be found: (1) that the drug "has a *high potential for abuse*"; (2) that the drug "has no currently accepted medical use in treatment in the United States"; and (3) that "[t]here is a lack of accepted safety for use of the drug or other drug under medical supervision." 21 U.S.C. § 812(b)(1).

The Comprehensive *Drug Abuse Prevention* and Control Act of 1970 consists of three titles; Title I relates to the prevention and treatment of narcotic addicts through the Department of Health and Human Services; Title II addresses drug control and enforcement as administered by the Attorney General and the DEA. Title III concerns the import and export of controlled drugs. Gonzales, 545 U.S. at 12, *Fn.* 19. The DEA was created by Executive Order in 1973 to provide a single unified command for the Federal Government in "fighting the war on drug abuse."[2]

It is clear that the primary goal of the CSA is to prevent drug abuse. The DEA and DOJ effectuate this primary goal of the CSA through criminal investigations,

---

[2] Richard Nixon, Message to the Congress Transmitting Reorganization Plan 2 of 1973 Establishing the Drug Enforcement Administration, March 28, 1973.

prosecutions, and civil forfeitures. Not only does this qualify as the unlicensed practice of medicine, the DEA's enforcement of the CSA constitutes mandatory preventative medical treatment in violation of the fundamental right to be free from unwanted medical treatment.

The term "medical treatment" is ambiguous and is nowhere defined in the CSA. However, the 9th Circuit found that the following definition of "medical treatment" was reasonable; "The management of illness, by the use of drugs, dieting, or *other means* designed to bring relief or *effectuate a cure*." Franceschi v. American Motorists Ins. Co., 852 F.2d 1217, 1220 (9th Cir. 1988); *citing* Funk & Wagnalls New Comprehensive International Dictionary of the English Language (1980) (emphasis added). The primary purpose of the CSA is to conquer the illness of drug abuse, in other words, effectuate a cure of drug abuse. Therefore, the CSA constitutes medical treatment.

Colorado statutes define the practice of medicine as "holding out one's self to the public within this state as being able to diagnose, *treat…* or *prevent any* human *disease…* or physical or mental condition… by… *any* physical, mechanical, *or other means whatsoever;*" C.R.S. 12-36-106(1) (2010) (emphasis added). The Federal Government, through myriad agencies, have held themselves out to the people of the State of Colorado as being able to prevent drug abuse through enforcement of criminal laws. Plaintiff has not consented to this preventative medical treatment, and the mandatory enforcement of this medical treatment, thereby, violates Plaintiff's fundamental right to bodily integrity.

When a statute or law significantly interferes with the exercise of a fundamental right, "it cannot be upheld unless it is supported by sufficiently important state interests

and is closely tailored to effectuate only those interests." Zablocki v. Redhail, 434 U.S. 374, 388 (1978). The government has no interest banning a plant that has no reported fatalities, is not physically addictive, provides myriad health, spiritual, and intellectual benefits, and is widely accepted in modern American culture.

The Supreme Court has recognized a liberty interest in bodily integrity where individuals are subject to *dangerous* or *invasive* procedures where their *personal liberty is being restrained.* Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006); *see, e.g.,* Rochin v. California, 342 U.S. 165 (1952) (determining that a detainee's bodily integrity was violated when police ordered doctors to pump his stomach to obtain evidence of drugs); Screws v. United States, 325 U.S. 91 (1945) (holding that an individual's bodily integrity was violated where a citizen was beaten to death while in police custody). Plaintiff's personal liberty is significantly restrained when his employer can dictate the lawful activities in which Plaintiff may engage in his own home during non-working hours.

   *iv.*  *Consent*

Under Colorado law, a doctor has a duty to obtain a patient's informed consent before performing medical treatment, which involves informing the patient of any substantial risks of the procedure. Bloskas v. Murray, 646 P.2d 907, 912-13 (Colo.1982). When law enforcement agencies and officers with no medical training attempt to prevent the disease of drug abuse, they not only practice medicine without a license, but also do not disclose the substantial risks associated with this form of preventative treatment.

The substantial risks of preventing drug abuse through law enforcement action and criminal prosecution are numerous and include;

    a.    possible injury and/or death at the hands of officers;

    b.    destruction and/or seizure of personal property, including violent entry into private residences with battering rams, flash-bang grenades, and military-style assault weapons;

    c.    humiliation and embarrassment through arrest and prosecution;

    d.    social limitations and restrictions, as well as loss of liberty, due to felony conviction;

    e.    substantial taxpayer costs due to law enforcement expenditures and prison construction;

    f.    diversion of law enforcement resources from violent crimes and crimes that have cognizable victims;

    g.    creation of lucrative black market for prohibited substances, including marijuana;

    h.    mass incarceration of non-violent drug offenders to the point that the United States of America has more prisoners per-capita than any other country in the world;

    i.    over 50,000 deaths on the United States/Mexico border due to American demand for prohibited substances and Mexican military crackdown on substance manufacturers and distributors;

Even in 1974, the Supreme Court of Colorado recognized several of the substantial risks that the continued preventative treatment of drug abuse, specifically of marijuana, has on the citizens, officials and resources of this state;

> A felony is the most serious of crimes; a felony conviction can result in the loss of liberty and the rights enjoyed by other citizens. The integrity--and obedience--of the laws of this state, moreover, rest, in the final analysis, on the consent of the People. They cannot consent to that which they do not

believe to be true, nor can they believe what has been disproven in the scientific laboratories of this country. Police conduct aimed at the thousands of persons involved in the use and dispensing of marijuana, furthermore, has often given way to overzealous police practices which endanger the right of privacy. Then, too, we are all too well aware of the heavy burden that the court and prison officials must bear to process the numerous felonies which this law precipitates. These considerations cannot be slighted by continued legislative inactivity.

People v. Summit, 183 Colo. 421, 428, 517 P.2d 850, 854 (Colo. 1974); See, e.g., People v. Weisenberger, 516 P.2d 1128 (announced December 17, 1973).

When a statute or law significantly interferes with the exercise of a fundamental right, "it cannot be upheld unless it is supported by sufficiently important state interests and is closely tailored to effectuate only those interests." Zablocki v. Redhail, 434 U.S. 374, 388 (1978). While the government has an interest in preventing drug abuse, just like it has an interest in preventing alcoholism or nicotine addiction through use of educational programs rather than criminal penalties, the mandatory application of preventative treatment of this disease violates Plaintiff's right to be free from unwanted medical treatment.

B.  The First Amendment Includes The Right To Receive Information And Marijuana Imparts Chemical Information To The User

The U.S. Constitution prohibits the Federal government from interfering with the minds and thoughts of its citizens. The First Amendment declares that individuals have the freedom, with very few limitations, to express their thoughts and opinions. The First Amendment necessarily protects thoughts as well. The United States Supreme Court has proclaimed that individuals are bestowed with the fundamental right to receive

8

information and ideas. The Federal prohibition of marijuana violates this fundamental right and should not preclude Plaintiff's claims.

>  i. *Controlled Substances Impart Chemical Information To Individuals*

Individuals receive unique chemical information when certain chemicals and substances are introduced into their brains. These substances trigger a chain reaction of neurological functions that result in enhanced thoughts, perceptions, and sensations. When marijuana is consumed, its active ingredient, Delta-9-tetrahydrocannabinol, attaches to cannabinoid receptors on nerve cells in the brain, affecting the way those cells work. "Cannabinoid receptors are abundant in parts of the brain that regulate movement, coordination, *learning and memory, higher cognitive functions such as judgment, and pleasure*." National Institute on Drug Abuse, Report Series: Marijuana Abuse, Pub. No. 10-3859 (2010). "Along with euphoria, relaxation is another frequently reported effect in human studies. Marijuana's effects also include "heightened sensory perception (e.g., brighter colors), laughter, altered perception of time, and increased appetite." id.

>  ii. *The First Amendment Protects The Receipt Of Thoughts, Sensations, And Perceptions*

The right to exercise freedom of speech is one of the most fundamental rights bestowed by the U.S. Constitution. Freedom of thought necessarily predicates freedom of speech. In 1928, Justice Brandeis stated that "the makers of our Constitution… sought to protect Americans in their beliefs, their thoughts, their emotions and their sensations" because "[t]hey recognized the significance of man's spiritual nature, of his feelings and of his intellect." Olmstead v. United States, 277 U.S. 438, 478 (1928). The CSA's

9

prohibition of distribution and possession of a plant that causes individuals to experience sensations and emotions such as euphoria and laughter violates the fundamental tenets of the First Amendment.

The Supreme Court has recognized the right to receive information, necessary for the development of thoughts, ideas, and, ultimately speech, as a fundamental right, enshrined in the First Amendment. "[The] freedom [of speech and press] . . . necessarily protects the right to receive . . . ." Martin v. City of Struthers, 319 U.S. 141, 143 (1943); *see also* Griswold v. Connecticut, 381 U.S. 479, 482 (1965); Lamont v. Postmaster General, 381 U.S. 301, 307-308 (1965); Pierce v. Society of Sisters, 268 U.S. 510 (1925). The right to "receive information and ideas, regardless of their social worth, is fundamental to our free society." Winters v. New York, 333 U.S. 507, 510 (1948)

In Stanley v. Georgia, an individual was convicted of possessing obscene videos in his own home in violation of Georgia's anti-obscenity laws. Stanley v. Georgia, 394 US 557 (1969). The U.S. Supreme Court lambasted the State of Georgia for even propounding such a constitutionally violative statute and declared, "[o]ur whole constitutional heritage rebels at the thought of giving government the power to control men's minds." id. at 565. Justice Marshall further scorned, "in the face of these traditional notions of individual liberty, Georgia asserts the right to protect the individual's mind from the effects of obscenity... [w]hatever the power of the state to control public dissemination of ideas inimical to the public morality, it cannot constitutionally premise legislation on the desirability of controlling a person's private thoughts." id.

10

However, the CSA's prohibition of marijuana is premised on the desirability of preventing individuals from experiencing the euphoria, relaxation, heightened sensory perception, altered perception of time, and other affects of marijuana. The "right to receive" recognized in *Stanley* is "not a right to the existence of modes of distribution of obscenity which the State could destroy without *serious risk of infringing on the privacy of a man's thoughts*." United States v. Reidel, 402 U.S. 351, 360, 91 S.Ct. 1410, 1419 (1971); *see also* West Virginia State Board of Education v. Barnette, 319 U.S. 624, 642 (1943). The CSA seriously infringes upon Plaintiff's private thoughts and ideas because the CSA does not allow for any distribution of marijuana, nor consumption of marijuana, thereby banning the unique thoughts, ideas, emotions, and sensations imparted to the individual when consuming marijuana. The prohibition of distribution and private consumption of marijuana is no more constitutional than a prohibition of the distribution and private consumption of adult magazines.

Just like many of the substances prohibited by the CSA, obscene images have a high potential for addiction and abuse because viewing sexually arousing images releases a large amount of neurochemicals. Viewing these images releases dopamine and norepinephrine, neurochemicals that focus attention and enhance memory, as well as oxytocin, a neurochemical that is released when people hold hands or kiss.

Similarly, the THC molecule, received into the brain through consuming marijuana, binds to specific cannabinoid receptors in the brain. The cerebral cortex contains a high concentration of cannabinoid receptors, especially in areas responsible for

sensory perception (touch, sight, hearing, taste, and smell). This is why marijuana effects thinking, problem solving, sensory perception, movement, balance, and memory.

Marijuana and other substances under the Federal CSA qualify for First Amendment protection. "[T]he basic principles of freedom of speech . . . do not vary" with a new and different communication medium. Joseph Burstyn, Inc. v. Wilson, 343 U. S. 495, 503 (1952). The most basic principle—that government lacks the power to restrict expression because of its message, ideas, subject matter, or content is subject to a few limited exceptions for historically unprotected speech. Ashcroft v. American Civil Liberties Union, 535 U. S. 564, 573 (2002). However, the legislature "cannot create new categories of unprotected speech simply by weighing the value of a particular category against its social costs and then punishing it if it fails the test." Brown v. Entertainment Merchants Association, U.S. S. Ct. No. 08–1448., Decided June 27, 2011; *see also* United States v. Stevens, 559 U.S. ___, 130 S.Ct. 1577 (2010).

   *iii.* *The CSA Does Not Pass Strict Scrutiny*

The CSA attempts to completely restrict the ability to receive information through consumption of marijuana. The blanket prohibition of the receipt of unique chemical information obtained exclusively through the consumption of marijuana violates the right to freedom of thought and speech. Therefore, the CSA is invalid unless it can be shown that it is justified by a compelling government interest and is narrowly drawn to serve that interest. R. A. V. v. St. Paul, 505 U. S. 377, 395 (1992). The primary interest supporting the CSA is the prevention of a disease through enforcement of mandatory

criminal laws and civil forfeitures. This violates substantive due process and is not a compelling government interest.

Furthermore, the blanket prohibition of substances under Schedule I of the CSA is not narrowly tailored to prevent substance abuse. The CSA obliterates a plethora of legitimate uses of Schedule I controlled substances in its attempt to prevent drug abuse. Marijuana has a long history of medical and spiritual use, as well as influencing the thoughts and ideas of artists, writers, scientists, musicians, philosophers, and countless other individuals of all ethnicities, ages, and social statuses.

The government offends the spirit of the First Amendment when it "contract[s] the spectrum of available knowledge" by restricting the right to receive information and to exercise the freedom of inquiry, the freedom of thought. Griswold v. Connecticut, 381 U.S. 479, 482 (1965); *see also* Martin v. Struthers, 319 U.S. 141, 143 (1943); Wieman v. Updegraff, 344 U.S. 183, 195 (1952)(Justice Frankfurter and Douglas concurring). By enforcing a blanket prohibition on the manufacture, sale, and use of marijuana, the government prohibits individuals from experiencing the unique thoughts, sensations, and perspectives obtained exclusively through consumption of marijuana.

The First Amendment is not a shield that protects conduct that is clearly a violation of a valid criminal statute. However, the CSA is not a valid criminal statute because it constitutes a violation of the First Amendment right to receive information as well as an unconstitutional infringement upon the fundamental right to bodily integrity.

    C.    <u>Lack of Schedule I Qualification</u>

13

The classification of marijuana as a schedule I substance is an unreasonable legislative classification because marijuana has many accepted and safe medical uses in Colorado and the United States.

In order to qualify as a schedule I substance under the UCSA, a substance must;

(1) have a high potential for abuse;

(2) have no currently accepted medical use in treatment in the United States; and

(3) lack accepted safety for use of the drug or other substance under medical supervision.

C.R.S. § 18-18-203(1)(a)-(c).

In 2001, Colorado voters amended the Colorado Constitution to allow for the medical use of marijuana. Colo. Consti. Art. XVIII § 14. In 2010, the Colorado Legislature enacted the "Colorado Medical Marijuana Code" in order to regulate the cultivation, manufacture, distribution, and sale of medical marijuana. C.R.S. 18-18-406.3. Furthermore, 17 states now have a medical marijuana program to allow patients with debilitating conditions, such as cancer, glaucoma, HIV/AIDS, and myriad other conditions, to treat the symptoms of their conditions. Clearly, in 2012, there are currently accepted medical uses in treatment for marijuana in Colorado and the United States. Furthermore, patients can safely use marijuana through ingestion of edibles or through vaporization under medical supervision. The use of marijuana is so safe that medical use does not require physician supervision and no reported deaths have ever been attributed solely to overdose of marijuana.

In 1974, the Colorado Supreme Court "reluctantly" declared that classification of marijuana as a dangerous or hallucinogenic substance was a reasonable legislative classification. <u>Summit</u>, 517 P.2d 850 at 851. In 2012, 38 years after the *Summit* holding and after over 10 years of medical marijuana in the State of Colorado, the classification of marijuana as a substance with no accepted medical use or safe means of administration can no longer be considered a reasonable legislative classification.

Dated this 6th Day of November, 2012          Respectfully Submitted,

                                                                    *[signature]*
                                                    Travis B. Simpson, Esq.

## Certificate of Service

Undersigned counsel hereby certifies that on the 6th day of November, 2012:

☐ placed in the United States mail, postage prepaid and properly sealed and addressed,

☒ sent by certified United States mail,

☐ sent by facsimile, with original mailed,

☐ hand delivered

a true and complete copy of the foregoing **NOTICE OF CLAIM OF UNCONSTITUTIONALITY** to:

Eric H. Holder, Jr.
United States Attorney General
950 Pennsylvania NW Ste 700
Washington, DC 20530

John F. Walsh III
United States Attorney for the District of Colorado
1225 17th St. Ste. 700
Denver, CO 80202

John W. Suthers
Colorado Attorney General
1525 Sherman St. 7th Flr.
Denver, CO 80203

By: _____

16